# EXHIBIT D

## DEAL MEMO AGREEMENT Showtime Networks Inc. ("SNI")

| | | |
|---|---|---|
| **LICENSOR:** [exact legal name/address] | Sweet Micky, LLC<br>3601 PGA Boulevard, Suite 220<br>Palm Beach Gardens, FL 33410 | **DATE:** 9/22/2015<br>**ACCOUNT EXECUTIVE:** Gabriel Gazoul<br>gabriel.gazoul@showtime.net |
| **LICENSOR CONTACT:** | Phone: (561) 345-3895<br>Fax: (561) 345-3899<br>Prakazrel Michel; prasmichel@gmail.com<br>(310) 499-8584 | |
| **SALES CONTACT:** | Adam Galen; adam@preferredcontent.net<br>(323) 782-9193 | |
| **LEGAL CONTACT:** | Dean R. Cheley, Esq.; dean@donaldsoncallif.com<br>(310) 277-8394 | |
| **DELIVERY CONTACT:** | Ben Patterson; ben@onslot.com<br>(212) 380-7672 and (347) 578-0437 | |

| TITLE (each, a "Picture") [exactly as it appears on master] | 1st EXH/ COMPL YR | U.S. RLS* | POST 1998** | LICENSE PERIOD START-END | SNI SERVICES | LICENSE FEE | MPAA | TYPE | BUD |
|---|---|---|---|---|---|---|---|---|---|
| Sweet Micky For President | 1/2015 | 2015 | Y | 03/15/2016-03/14/2018 | All SNI | $70,000 | N/A | Doc. | C |

\* Year of first commercial exhibition in U.S.   \*\* First exhibition (including film festivals) anywhere in world occurred after 1/1/98
The SNI Standard Terms and Conditions are attached hereto and incorporated herein.

**SWEET MICKY, LLC**
(Fed. I.D. #:46-4065589)

By: _[signature]_
Name: BENJAMIN PATTERSON
Its: PRODUCER/DIRECTOR

**SHOWTIME NETWORKS INC.**

By: _[signature]_
Name: ~~H. Gwen Marcus~~ ANDREA SIMON
Its: ~~EVP & General Counsel~~ DEPUTY GENERAL COUNSEL

w:\wshared\...\kevin\contracts\SweetMicky1b.doc

CONFIDENTIAL

SM_000089

## SNI STANDARD TERMS AND CONDITIONS

**1. GRANT OF RIGHTS:** For good and valuable consideration, the receipt and sufficiency of which the parties hereto hereby acknowledge, Licensor hereby grants to SNI the exclusive right, title, and license to "Distribute" (including in "High Definition" and "Standard Definition," and with or without closed captioning) each "Picture" on "Pay Services" in the English and Spanish languages throughout the "Territory" during such Picture's "License Period" (as such terms are defined herein) (the "Rights"), subject to all of the terms and conditions set forth herein.

**2. TERRITORY:** U.S. (including its territories, possessions and commonwealths, including Puerto Rico), all U.S. military installations (including ships) wherever located, Bermuda, the Bahamas, and the Caribbean Basin (it being agreed that, notwithstanding anything herein, the grant of rights to SNI hereunder shall be non-exclusive in that portion of the Caribbean Basin not under the control, protection or possession of the U.S.).

**3. EXCLUSIVITY:** Licensor represents, warrants, and agrees that (x) neither the Picture nor any version (including, without limitation, foreign language and cut and edited versions) of the Picture has been Distributed throughout the Territory in any media (including without limitation the Internet) prior to the commencement of the Picture's License Period, and (y) neither the Picture nor any version of the Picture shall be Distributed in the Territory in any media now or hereafter known (including without limitation the Internet) until thirty (30) days after the end of the License Period; except that:

(A) prior to the commencement of the Picture's License Period, the Picture may solely be Distributed (i) "theatrically" and/or "non-theatrically" (as such terms are now commonly understood in the U.S. entertainment industry), and (ii) by means of Video On Demand, and/or Video Downloading;

(B) solely during the Picture's License Period and continuing for thirty days thereafter, the Picture may solely be Distributed in the Territory "theatrically" and "non-theatrically" (as such terms are now commonly understood in the U.S. entertainment industry), and/or by means of Video On Demand (such Video-On-Demand rights allowed only to the extent delivered by means of the Internet), and/or Video Downloading;

(C) in addition to the Distribution permitted above, commencing on the date that is ninety (90) days following the start of the License Period, the Picture may be Distributed (and such Distribution may be advertised, promoted and publicized) (i) by means of Home Video, and (ii) on the third-party Pay Service known as "Netflix Watch Instantly" as such service is currently configured and delivered.

In addition to the foregoing, from the date hereof until 30 days after the end of its License Period, Licensor shall neither Distribute nor permit others to Distribute the Picture in Mexico or Canada via broadcast television systems that have signals that carry into or within the Territory.

**4. LICENSE FEE:** Payable, in full, 60 days after the start of the License Period, but in no event prior to (a) Licensor's complete delivery of all items required hereunder, (b) the full execution of this Agreement (it being agreed that SNI shall execute the Agreement within five (5) business days of SNI's receipt of the copies signed by Licensor in the form as provided by SNI), and (c) Licensor's delivery of a completed U.S. tax form W-9.

**5. EXHIBITION DAYS:** Unlimited.

w:\ltwshared\...\kevin\contracts\SweetMicky1b.doc

2

6. DELIVERY/VERSIONS OF THE PICTURE: Licensor, at its expense, will create (or cause to be created) an English-language, closed-captioned true high definition HDcam master of the Picture transferred from film elements or shot in high definition in its original aspect ratio and deliver to SNI a dubbed copy of each such master (the "Dubbed Master"). If any other versions of the Picture have been made (for example, a dubbed Spanish-language and/or letterbox version) (the "Additional Versions") and are available to Licensor at no cost to Licensor, then Licensor will also deliver such Additional Versions to SNI at no cost to SNI. SNI has the right to create any such versions, and Licensor will make available to SNI, at no cost to SNI, all materials necessary for SNI to do so. The Pictures may be Distributed on any and/or all of the SNI Services in any analog and/or digital format(s) (including high definition formats and with any accompanying Dolby 5.1 audio track(s)). Without limiting any of SNI's rights hereunder, SNI shall have the right to accelerate the Picture's credits and/or squeeze such credits, and compress, down-convert, scale, up-convert, pan and scan, center cut and/or alter the resolution of such Picture. Licensor will also deliver to SNI the following (the "Ancillary Materials") for the Picture: master music cue sheet, memorandum of credit obligations, story synopsis (400-500 characters in length), an E&O certificate (per paragraph 7 below), electronic press kit (with 1080i/59.94i HDCam split track trailer: Audio. Ch 1: Dialogue; Ch 2: Music, Ch 3: Unfilled Effects; Ch 4: Mono English Comp.), 10 to 20 digital photographs (color) minimum of 4x6 inches at 300 dpi (8x12 inches at 300 dpi preferred), and key art or poster art (in the following formats): jpg - 1080 pixels wide or higher (2:3 aspect ratio) – image includes title only, jpg - 1080 pixels wide or higher (2:3 aspect ratio) – image includes title and billing block, jpg – 1080 pixels wide or higher (2:3 aspect ratio) – image with no text, jpg - 694x1000 pixels (2:3 aspect ratio) - image includes title only, jpg - 600x338 pixels (16:9 aspect ratio) - image includes title only.

Licensor shall promptly deliver all of the above-referenced materials when so requested by a representative of SNI, but in no event later than 90 days prior to the commencement of the Picture's License Period. The Dubbed Master, other existing NTSC versions and Additional Versions of a Picture shall be delivered to SNI at 1633 Broadway, NY, NY 10019, Attn: Sara Shacket, 17th Fl. Ancillary Materials shall be delivered to SNI at 1633 Broadway, NY, NY, 10019, Attn: Kevin Young, Law Department, 16th Fl.

7. E&O INSURANCE: Licensor, at its expense and for the duration of the License Period for the Picture, will secure and maintain producer's liability (errors and omissions) insurance in the minimum amount of $1,000,000 per claim and $3,000,000 in the aggregate and shall deliver to SNI a certificate of such insurance, in a form satisfactory to SNI. Such certificate must provide that such insurance (a) cannot be modified, terminated or canceled by the carrier without its first notifying SNI of such event, and (b) is not subject to any non-standard exclusions from, restrictions of or limitations in coverage or a deductible greater than $10,000. Such policy shall name as additional insureds Showtime Networks Inc., its parent, subsidiary and affiliated companies, successors, licensees and assigns and the respective officers, directors, agents and employees of any and all of the foregoing and shall contain an endorsement that negates the "other insurance" clause in the policy and a statement that the insurance being provided is primary and that any errors and omissions insurance carried by SNI or any other person or entity (other than Licensor) is neither primary nor contributing.

8. DEFINITIONS:

(a) "Commercial" means a paid advertisement (e.g., a 30-second segment) primarily featuring or describing a third-party product or service; provided, however, that none of the

w:\wshared\...\kevin\contracts\SweetMicky10.doc

3

CONFIDENTIAL    SM_000091

following shall be deemed to be a Commercial: (1) presentation and sponsorship credits; (2) billboards, signboards, and product placements intrinsic in a given motion picture, television program, or other audiovisual content, (3) offers to acquire (on a permanent or temporary basis) a download, DVD or other copy(ies) of a given motion picture, television program, or other audiovisual content that is Distributed on the applicable Pay Service; and (4) information or announcements about how and/or where to obtain information about a given product or service (but only if such product or service is directly related to a given motion picture, television program, or other audiovisual content that is Distributed on the applicable Pay Service) (e.g., identification of a website where consumers can obtain more information about the songs appearing in a particular program).

(b) "Delivery Methods" means any and all methods, protocols, software applications and technologies now known or hereafter developed, including any and all transmission paths now known or hereafter developed (including but not limited to satellite, cable, copper, Internet (streaming and downloading), microwave, optical fiber, wireless, electrical wire, cellular or any other radio spectrum), to, or for use by or on, any receiving, playback and/or display device now known or hereafter developed (including but not limited to set-top boxes, DVR's, computers, modems, smart phones, handheld and/or portable devices, monitors, televisions, gaming consoles and devices accessing content via any user interface (including but not limited to browsers, websites, apps and guides)).

(c) "High-Definition" or "HD" means any format with a vertical resolution equal to or greater than 720 lines.

(d) "Home Video" distribution means the Distribution of one or more versions of a single motion picture (together, if applicable, with related ancillary materials (e.g., "behind the scenes" footage), but excluding other motion pictures) on audio-visual cassettes, discs or other form of physical storage media (e.g., a USB stick) to and from retail outlets for the intended purpose of non-commercial viewing of such motion picture by consumers in exchange for the payment of a distinct, material and separate non-recurring fee (which non-recurring fee does not include the receipt by such recipient of any other motion picture(s), program(s), product(s) or service(s))..

(e) "Look Back" means functionality whereby a consumer may access on an SVOD basis content that was Distributed on a Sequential Basis within the preceding seven (7) days.

(f) "Pay Per View" means the electronic Distribution of a single motion picture on a Sequential Basis for viewing by an individual consumer, whereby a consumer purchases, on a non-de minimis, non-recurring fee-per-individual motion picture basis, the right to view a single exhibition (or multiple exhibitions within a single, continuous period of up to forty-eight (48) hours) of such motion picture in circumstances where such consumer accesses and views such exhibition(s) at a time(s) scheduled by a Pay Per View distributor.

(g) "Pay Service" means a service that distributes, delivers, exhibits, performs, displays and/or otherwise exploits (collectively, "Distribute" or "Distribution") Programming using any one or more Delivery Methods and that satisfies the following requirements: (X) it does not contain Commercials; and (Y) a consumer (or an institution (e.g., a hotel or motel)) is required to pay on a periodic basis a fee to receive such service (or to receive a package of Pay Services and/or other services including such service).

(h) "Programming" means a collection of motion pictures, television programs and/or other audiovisual content, which collection may be fixed or may change in whole or in part over time that is offered on a Sequential Basis and/or SVOD Basis

(i) "Sequential Basis" means Distribution of Programming in a continuous linear transmission (with or without Look Back and/or Start Over functionality) in an order determined by the programmer of the service on which such Programming is Distributed.

(j) "SNI Services" means (X) "Showtime"-branded, "The Movie Channel"-branded and "FLIX"-branded Pay Services (and any and all feeds, services and branded offerings of all of the foregoing); and (Y) any and all other Pay Services owned, operated, managed, controlled and/or branded, in whole or in part, by SNI or its affiliates; and (Z) the successors of each of the foregoing Pay Services.

(k) "Standard Definition" or "SD" means any format with a vertical resolution of less than 720 lines.

(l) "Start Over" means functionality whereby a consumer may rewind or restart content that is then in the process of being Distributed on a Sequential Basis.

(m) "SVOD Basis" means Distribution of Programming on an "on demand" access basis, whereby a consumer may select the time(s) for viewing given content in such Programming.

(n) "Video Downloading" means the electronic or other non-tangible transmission of a single copy of a single motion picture to any device under circumstances whereby the recipient of such transmission purchases, in exchange for the payment of a distinct, material and separate non-recurring fee (e.g., so-called "electronic sell-through") which non-recurring fee does not include the receipt by such recipient of any other motion picture(s), program(s), product(s) or service(s), title to and ownership of such copy (including the right without restriction to view such copy of such motion picture an unlimited number of times).

(o) "Video On Demand" means the electronic Distribution of a single motion picture for viewing by an individual consumer, whereby a consumer purchases, on a non-de minimis, non-recurring, fee-per-individual motion picture basis, the right to view a single exhibition (or multiple exhibitions within a single, continuous period of up to forty-eight (48) hours) of such motion picture in circumstances where such consumer accesses and views such exhibition(s) at a time(s) selected by the consumer in such consumer's discretion.

9. **DELIVERY METHODS:** The SNI Services may be Distributed via any and all Delivery Methods and may include without limitation the storage, copying, downloading and/or transfer of the Picture on an SNI Service to one or more devices, provided that any authorized viewing of such stored, copied, downloaded or transferred Picture shall be limited to such Picture's License Period(s). SNI shall employ (or cause to be employed) reasonable security methods (including encryption, copy protection and geofiltering) designed to prevent unauthorized access to each Picture Distributed on the SNI Services, which methods shall be no less stringent than those employed by SNI with respect to theatrical motion pictures in the same window being licensed by SNI from the major studio(s) and/or mini-major studio(s). Notwithstanding the foregoing, Licensor acknowledges and agrees that neither SNI (nor any other person or entity authorized by SNI to Distribute the SNI Services) shall be responsible or liable in the event a consumer engages in any unauthorized viewing, storage, copying, downloading, transferring and/or other exploitation of the Picture.

w:\\wshared\...\kevin\contracts\SweetMicky1b.doc

5

CONFIDENTIAL          SM_000093

## 10. ADVERTISING AND PREVIEW RIGHTS:

(a) SNI may advertise, promote and publicize the Picture and/or SNI Services in any and all media at any time from the date hereof and through the end of the Picture's License Period and may authorize third parties to do so (the "Advertising Rights"). The Advertising Rights include, without limitation, the right to use excerpts of the Picture and the name image, likeness and voice of, and biographical information relating to, anyone who rendered services in or in connection with the Picture (subject to reasonable contractual restrictions of which Licensor timely notifies SNI in writing). In addition, in the exercise of its Advertising Rights, SNI may use excerpts from the Picture that contain musical performances (in-context only) in advertising, publicity or promotional materials for the Picture. In addition to the foregoing, the Advertising Rights include, without limitation, the right to use all or any part(s) of the trailers for the Picture provided by Licensor to SNI hereunder in the electronic press kit. The name of the applicable SNI Service (or channel thereof) and/or its trademark and/or logo may be displayed during the Distribution of the Picture thereon.

(b) During the Picture's License Period, SNI may, without the payment of any additional sums to Licensor, Distribute the Picture, and authorize others to do the same, over the facilities of any SNI Service operator or distributor to: (i) persons who are not then currently receiving the SNI Service(s) or (ii) stores and showrooms for the purpose of demonstrating the SNI Services and/or DBS and/or HTVRO or other equipment or devices to members of the general public.

(c) From the date hereof, no statement, press release or other form of publicity of any kind about SNI or SNI's exhibition of the picture (including by conversations or electronic means (e.g., Twitter, Facebook, email, text messages)) to any form of press, media or the public, can be issued, authorized or permitted by Licensor or a third party without SNI's prior written consent or prior to any initial press release or other initial public announcement relating to this Agreement by SNI. Any violation of this restriction will be a material breach of the agreement, allowing SNI to terminate the agreement.

## 11. LICENSOR'S REPRESENTATIONS, WARRANTIES AND COVENANTS:

Licensor represents, warrants and covenants with respect to the Picture that:

(i) it has all the rights and authority necessary to enter into this Agreement and perform its obligations hereunder and to grant all rights granted or purported to be granted herein (including without limitation the right to use performers' names, images, voices, likenesses and biographies as contemplated herein subject to reasonable contractual restrictions of which Licensor timely notifies SNI in writing); nothing contained in the Picture, nor the entering into or performing of this Agreement, nor the exercise of any of the rights granted hereunder, will violate any applicable law or governmental rule or regulation, violate or infringe upon any rights whatsoever (including, without limitation, any copyright, trademark, moral right or other proprietary right or interest) of any third persons or entities or result in any other liability;

(ii) it owns or controls, and grants to SNI hereunder for no additional consideration, all the rights with respect to any music contained in the Picture that are required in connection with the Distribution of the Picture and Advertising Rights in accordance with this Agreement (including without limitation performance rights), except to the extent that the non-dramatic performance rights in musical compositions that are necessary to Distribute the Picture on the SNI Services are controlled by ASCAP or BMI or are in the public domain (it being agreed that.

w:\\wshared\...\kevin\contracts\SweetMicky1b.doc

6

as between Licensor and SNI, SNI shall be responsible for making all payments which may be required to be paid to ASCAP or BMI with respect to non-dramatic performance rights in musical compositions on account of SNI's Distribution of the Picture on the SNI Services hereunder);

(iii) the Picture is and will be protected by copyright in the Territory throughout the duration of this Agreement and has been registered in the United States Copyright Office in Washington, D.C. for copyright protection;

(iv) it has paid or will pay all charges, taxes, license fees, residuals, reuse, rerun, pension and health and welfare fund payments, and payroll tax payments or other payments due to any person (including, without limitation, any union, guild, actor, director, craftsman or performer) by virtue of any authorized use made of the Picture hereunder (including in connection with the Advertising Rights), and other amounts that have been or may become owed in connection with the Picture or SNI's exercise of the rights granted to it hereunder, and to the best of Licensor's knowledge, there are not pending any claims, litigations, liens, charges, restrictions or encumbrances on the Picture or on such rights that would (x) interfere with SNI's rights hereunder or (y) require SNI to make any payments on account of SNI's exercise of such rights (other than the License Fee for the Picture and any payments to ASCAP or BMI that may be required under Paragraph 11(ii) above);

(v) the Picture does not contain any depiction of "Actual" (i.e., the performer was actually engaged in the applicable act while being filmed) human sexual intercourse (including genital-genital, oral-genital, anal-genital, or oral-anal, whether between those of same or opposite sex), bestiality, masturbation, or sadistic or masochistic abuse (collectively, "Sexually Explicit Conduct"); and

(vii) the Picture does not contain any depiction of any lascivious exhibition of a performer's genitals or pubic area – including that which may be clothed ("Lascivious Exhibition") or any "Simulated" (i.e., the applicable act is depicted in the Picture in a manner causing a reasonable viewer to believe the performers engaged in such act notwithstanding that they did not actually do so) "Sexually Explicit Conduct" (as defined in Paragraph 11(v) above).

11A. SEXUALLY EXPLICIT CONDUCT: In the event that SNI, at any time in the good faith exercise of its legal judgment, determines that, contrary to the above representations and warranties, the Picture contains a depiction of Actual or Simulated Sexually Explicit Conduct or Lascivious Exhibition, then SNI shall have the right, without limiting any of its other rights or remedies, to (x) require Licensor to promptly deliver to SNI such documents and take such steps relating to such Picture as SNI may require, in connection with U.S. laws concerning depictions of Actual or Simulated Sexually Explicit Conduct or Lascivious Exhibition, and/or (y) terminate this Agreement with respect to such Picture upon notice to Licensor (including termination of SNI's obligation to pay a License Fee with respect to such Picture).

12. INDEMNIFICATION:

(a) Licensor shall defend, indemnify and hold harmless SNI and SNI's parent, subsidiary and affiliated companies, successors, licensees and assigns and their respective shareholders, officers, directors, employees and agents (collectively, "Related Entities"), against and from any and all claims, damages, losses, liabilities, costs and expenses (including, without limitation, fees and disbursements of counsel) (collectively, "Claims") incurred by SNI in any action, claim or proceeding between SNI and Licensor or between SNI and any third party or otherwise, arising out of the exercise of any rights granted herein or out of any breach or claimed breach

CONFIDENTIAL       SM_000095

by Licensor of any representation, warranty, covenant (including Paragraph 11(iv) above without giving effect to the words "to the best of Licensor's knowledge") or other provision hereof. SNI shall defend, indemnify and hold harmless Licensor and Licensor's Related Entities against and from any and all Claims incurred by Licensor in any action, claim or proceeding between SNI and Licensor or between Licensor and any third party or otherwise, arising out any breach or claimed breach by SNI of any representation, warranty, covenant or other provision hereof.

(b) In order to seek or receive indemnification, the party seeking indemnification (the "indemnitee") shall promptly notify the other party (the "indemnitor") of each Claim and shall afford the indemnitor the opportunity to participate in any compromise, settlement, litigation or other resolution of such Claim, or, at the election of the indemnitee, shall require the indemnitor to assume the defense of any such Claim, with counsel of the indemnitor's own choosing; provided, however, that if the indemnitor is required to assume such defense, the indemnitee shall have the opportunity to participate fully in such defense at the indemnitee's expense. Neither party shall compromise, settle or otherwise resolve such Claim without the other party's prior written consent, not to be unreasonably withheld; provided, however, that failure to respond within ten business days following receipt of written notice of such proposed compromise, settlement or resolution shall constitute consent to the proposed compromise, settlement or resolution.

13. MISCELLANEOUS:

This Agreement (which consists of the Deal Memo Agreement and the SNI Standard Terms and Conditions), and the rights and obligations of the parties hereunder shall inure to the benefit of and be binding upon the parties' successors, licensees and assigns; provided, however, that Licensor may not assign or transfer this Agreement, or any of its rights or obligations hereunder, without the prior written consent of SNI. Any purported assignment or transfer in violation of the foregoing shall be null, void and not enforceable. This Agreement contains the entire understanding of the parties hereto relating to the subject matter hereof and no terms, obligations, representations, promises, conditions (whether written or oral, express or implied) relating to the subject matter hereof have been made or relied upon, other than those contained herein. Neither Licensor nor SNI shall disclose to any third party the financial terms of this Agreement except to the extent necessary to: (a) comply with law or the valid order of a court of competent jurisdiction, in which event(s) the party making such disclosure shall so notify the other as promptly as practicable (if possible, prior to making such disclosure), and shall seek confidential treatment of such information, (b) comply with S.E.C. or similar disclosure requirements under applicable laws, (c) conduct its normal reporting or review procedure to its parent and affiliated companies, their banks, auditors, attorneys, and similar professionals, provided such entities and professionals agree to be bound by these confidentiality provisions, and (d) enforce its rights hereunder. This Agreement may not be modified, nor may any provision be waived, except in a writing signed by both parties hereto. No payment under this Agreement shall operate as a waiver of any provision hereof. No waiver of any breach or default under this Agreement shall operate as a waiver of any preceding or subsequent breach or default. THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS EXECUTED AND TO BE PERFORMED ENTIRELY THEREIN. EACH PARTY IRREVOCABLY AGREES THAT THE STATE AND FEDERAL COURTS LOCATED IN NEW YORK CITY SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY SUIT OR OTHER PROCEEDING ARISING OUT OF OR BASED UPON THIS AGREEMENT, AND EACH WAIVES ANY CLAIM THAT IT IS NOT SUBJECT PERSONALLY TO THE JURISDICTION OF

SAID COURTS OR THAT ANY SUCH SUIT OR OTHER PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM OR IMPROPER VENUE.

NOTE: All contractual/payment inquiries and all legal documents (including notices) should be forwarded to:

Kevin Young
C/o Law Department
Showtime Networks Inc.
1633 Broadway, 16th Fl.
New York, NY 10019
Tel: 212-708-1354  Fax: 212-708-1391
Kevin.young@showtime.net

w.\\wshared\...\kevin\contracts\SweetMicky1b.doc

9

CONFIDENTIAL    SM_000097